UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARQUIS JEROME POLLARD,<br>    Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br>    Respondent. | No. 3:24-cv-169 (SRU) |

**RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

On February 7, 2024, Marquis Jerome Pollard ("Pollard" or "the petitioner"), proceeding *pro se*, filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, challenging the legality of the sentence imposed on him. *See* Doc. No. 1. For the following reasons, Pollard's motion is **DENIED**.

**I.      BACKGROUND**

On June 29, 2021 a grand jury returned an indictment charging Pollard with unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). *See* Indictment, *United States v. Pollard*, No. 3:21-cr-108 (SRU), Doc. No. 27. Pollard had similar charges pending against him in South Carolina, and consented to transferring that case to the District of Connecticut. *See* Consent to Transfer, *United States v. Pollard*, No. 3:22-cr-152 (SRU), Doc. No. 1. On October 28, 2022, Pollard entered into a plea agreement with the government, pleading guilty to Count One of the Connecticut indictment and Count One of the South Carolina indictment, each charging a violation of Section 922(g)(1). *See* Plea Agreement, *United States v. Pollard*, No. 3:22-cr-152 (SRU), Doc. No. 9. Subsequently, at a hearing on February 27, 2023, I sentenced Pollard to 96 months' imprisonment on Count One of each indictment, to be served concurrently, followed by a term of supervised release of 3 years on each count, also to be served

concurrently. *See* Judgment, *United States v. Pollard*, No. 3:22-cr-152 (SRU), Doc. No. 26. Judgment entered on March 3, 2023. *See id.*, Judgment, *United States v. Pollard*, No. 3:21-cr-108 (SRU), Doc. No. 145. Pollard did not appeal.

## II.     LEGAL STANDARD

Section 2255 provides a prisoner in federal custody an opportunity to challenge the legality of his or her sentence. To obtain relief under Section 2255, the petitioner must show that his or her prior sentence was invalid because: (1) it was imposed in violation of the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) it exceeded the maximum detention authorized by law; or (4) it is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The standard is a high one; even constitutional errors will not be redressed through a Section 2255 petition unless they have had a "substantial and injurious effect" that results in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637 (1993); *Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht*'s harmless error standard to Section 2255 petition). The petitioner bears the burden of proving, by a preponderance of the evidence, that he is entitled to relief. *See Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995).

## III.     DISCUSSION

Pollard challenges the constitutionality of his sentence, arguing that Section 922(g)(1), as applied to him, is unconstitutional. *See generally* Pet., Doc. No. 1. He relies on the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, which he argues requires the government to "demonstrate[] that, as to Petitioner, the federal felon in possession ban is consistent with America's 'historical tradition of firearm regulation.'" Pet., Doc. No. 1, at 19 (quoting *Bruen*, 597 U.S. 1, 17 (2022)).

I disagree that the government is required to make that showing. In *Bruen*, the Supreme Court criticized the "two-step" test for analyzing Second Amendment challenges that lower courts had "coalesced around" in the years since its decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), in which the Court held for the first time that the Second Amendment guarantees an individual right to bear arms for self-defense. The *Bruen* Court described that test as combining "history with means-ends scrutiny," and emphasized that the proper test must be "rooted in the Second Amendment's text, as informed by history." 597 U.S. 1, 17-19 (2022). The Court set forth a new test for determining the constitutionality of firearm regulations:

> In keeping with *Heller* . . . when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

*Id* at 17. However, the majority opinion in *Bruen* was careful to emphasize, at numerous points, that it was *reaffirming* and clarifying *Heller*, not abrogating the Court's reasoning in those cases. *See, e.g.*, *Bruen*, 597 U.S. at 10 ("We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."). The Court in *Heller* had been clear that the "right secured by the Second Amendment is not unlimited," and "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," among other categories of presumptively constitutional prohibitions. *Heller*, 554 U.S. at 626-27. Six Justices authored or joined separate opinions in *Bruen* that explicitly note that *Bruen* does not disrupt *Heller*'s endorsement of laws banning felons from possessing firearms. *See Bruen*, 597 U.S. at 71 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns.");

80-81 (Kavanaugh, J., joined by Roberts, C.J., concurring) (quoting the passage from *Heller* explicitly endorsing felon-in-possession laws, and stating that, "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations."); 129 (Breyer, J., joined by Sotomayor and Kagan, J.J., dissenting) (referring to the same passage in *Heller* and stating "I understand the Court's opinion today to cast no doubt on that aspect of *Heller's* holding.").

Moreover, the Second Circuit held in a *per curiam* opinion in the case *United States v. Bogle*, that "§ 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons." 717 F.3d 281, 281-82 (2d Cir. 2013). Despite predating *Bruen*, *Bogle* remains good law because it does not employ any means-ends interest balancing that the Court in *Bruen* clarified was improper. *See Bruen*, 597 U.S. at 19 ("*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context."). Instead, *Bogle* is a succinct opinion that relies wholly on the language of *Heller* and *McDonald*, cases that *Bruen* endorsed. *Bogle*, 717 F.3d at 281 ("[I]n both of these opinions [*Heller* and *McDonald*], the Supreme Court clearly emphasized that recent developments in Second Amendment jurisprudence should not 'be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'"). This Court remains bound under *Bogle* to hold that Section 922(g)(1) is facially constitutional, and it is therefore unnecessary to engage in the historical analysis that *Bruen* commands in order to ascertain whether felon-in-possession laws unconstitutionally restrict individuals' right to bear arms.

But, as noted previously, Pollard raises an as-applied, rather than a facial, challenge to Section 922(g)(1)'s constitutionality. An as-applied challenge to a statute's constitutionality "requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a

protected right." *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). However, it is unclear whether as-applied challenges to Section 922(g)(1) are available to defendants after *Bruen*. *Compare United States v. Jackson*, 69 F.4th 495, 501-02 (8th Cir. 2023) (holding that Section 922(g)(1) is constitutional facially and as-applied, and concluding that, "[g]iven the[] assurances by the Supreme Court" in *Heller*, *McDonald*, and *Bruen* "and the history that supports them. . . . there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1).") *with Range v. Attorney General*, 69 F.4th 96, 106 (3d Cir. 2023) (en banc) (holding that a conviction for food-stamp fraud could not support a ban on the defendant possessing a firearm because that specific application of Section 922(g)(1) had no historical analogue).

The Second Circuit has not yet squarely considered the question whether a plaintiff can mount an as-applied challenge to the constitutionality of Section 922(g)(1). By arguing that Section 922(g)(1) is unconstitutional as applied to him because his prior felony burglary conviction was non-violent, Pollard is essentially asking this Court to follow the Third Circuit's decision in *Range*. However, as observed by another district court in the Second Circuit, *Range* "(1) is not binding in this Circuit; (2) is an outlier amongst courts across the country analyzing post-*Bruen* constitutional challenges to § 922(g)(1); and (3) most importantly, was limited in precedential value by the *Range* Court itself to the specific and unusual facts of that case." *United States v. Sternquist,* 2023 WL 6066076, at *6 (E.D.N.Y. Sept. 15, 2023). The defendant in *Range* had a prior conviction for food-stamp fraud, a "nonviolent, non-dangerous misdemeanor" under state law, that triggered the application of Section 922(g)(1) because it was punishable by up to five years' imprisonment. *Range,* 69 F.4th at 99. In comparison, although Pollard may be correct that his burglary conviction can be classified as "non-violent" in some

5

circumstances, his criminal background is far different than the defendant in *Range*. Pollard was convicted in South Carolina of burglary in the second degree, a felony punishable by up to fifteen years in prison and which requires proof of one of several enumerated aggravating circumstances, a number of which involve the use of violence or the threat of violence. *See* S.C. Code Ann. § 16-11-312.

Therefore, even assuming that an as-applied challenge was available to Pollard, his challenge would fail because his disarmament on the basis of his felony conviction for burglary aligns closely to this nation's historical tradition of disarming individuals determined to be "dangerous." *See, e.g., Antonyuk v. Chiumento,* 89 F.4th 271, 314 (2d Cir. 2023) (explaining that the Second Amendment permits the government to disarm those who it determines would "pose a danger to himself, others, or to public safety" and that "the use of dangerousness as a disqualifier does not appear controversial."); *Jackson*, 69 F.4th at 502–05 ("[L]egislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1)."); *Range*, 69 F.4th at 104 (explaining that the earliest version of the federal law banning felons from possessing firearms "initially covered those convicted of a limited set of violent crimes such as murder, rape, kidnapping, and *burglary*.") (emphasis added) (quoting *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011)).

Therefore, I conclude that Section 922(g)(1) remains constitutional after *Bruen*, both facially and as applied to Pollard, and that his petition must be denied on that basis.

Moreover, Pollard's petition must also be denied on the separate grounds that he waived his right to challenge his conviction. As stated above, Pollard entered into a plea agreement with the government on October 28, 2022, which resolved both of the pending cases against him. *See* Plea Agreement, *United States v. Pollard*, No. 3:22-cr-152 (SRU), Doc. No. 9; *United States v. Pollard*, No. 3:21-cr-108 (SRU), Doc. No. 112. That plea agreement stated, in relevant part:

> The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims he might raise, the defendant waives his right to challenge his conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

*Id.* at 7. Pollard therefore waived his right to challenge his conviction through a motion made under Section 2255. The Second Circuit has held that a defendant's knowing and voluntary waiver of the right to collaterally attack his conviction is presumed enforceable. *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam). And, this case presents no "overriding impact on public interest" or "violation of a fundamental right" that, in other cases, might justify voiding an appeal waiver where a defendant challenges the constitutionality of their conviction. *Negron v. United States,* 520 F. Supp. 3d 296, 301 (E.D.N.Y. 2021) (quoting *United States v. Riggi*, 649 F.3d 143, 147-48 (2d Cir. 2011)). Here, as explained previously, the Supreme Court has not, contrary to Pollard's argument, announced a new constitutional rule that warrants vacating Pollard's conviction. Therefore, I also find that his waiver is enforceable.

Finally, under Section 2255, a petitioner is entitled to a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Pollard is not entitled to a hearing because his petition is grounded only in a

7

legal argument that is plainly without merit. "A hearing is not required . . . where the allegations are insufficient in law." *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970). Therefore, I hold that no hearing is required in this matter.

## IV.  CONCLUSION

For the foregoing reasons, Pollard's motion to vacate, set aside, or correct sentence, doc. no. 1, is **denied**.

Because Pollard has not made a substantial showing that this ruling denies his constitutional rights, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk is directed to close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 21st day of October 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge